**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ALBERTO MARQUEZ CRUZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:13CV1097 |
| | ) |
| BOB MARSHALL, | ) |
| FRANK L. PERRY,[1] | ) |
| | ) |
| Respondents. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 3.) On January 10, 2011, in the Superior Court of Guilford County, Petitioner pled guilty to conspiracy to traffic in more than 400 grams of cocaine, trafficking by possessing more than 400 grams of cocaine, trafficking by transporting more than 400 grams of cocaine, trafficking by delivering more than 400 grams of cocaine, trafficking by transporting 28-200 grams of cocaine, trafficking by sale and delivery of 28-200 grams of cocaine, and trafficking by possessing 28-200 grams of cocaine, in cases 10 CRS

---

[1] Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases, the Petition in this case originally named Kieran J. Shanahan, then-Secretary of the North Carolina Department of Public Safety, as Respondent. (Docket Entry 1.) Frank L. Perry currently serves in that position, see https://www.ncdps.gov/Index2.cfm?a=000003,000008,000153,002681 (last visited Jan. 9, 2015), and by operation of Federal Rule of Civil Procedure 25(d) (applicable to this proceeding pursuant to Rule 12 of the Rules Governing Section 2254 Cases), now appears as Respondent.

84147-50 and 84152-53, and received a consolidated judgment with a mandatory term of 175 to 219 months in prison. (Docket Entry 3, ¶¶ 1-6; Docket Entry 3-2 at 41-43.)[2] He did not appeal. (Docket Entry 3, ¶ 8.)

On March 14, 2013, Petitioner filed a Motion for Appropriate Relief ("MAR") in the trial court. (Docket Entry 3, ¶ 11(a); Docket Entry 3-1 at 11-15; Docket Entry 3-2 at 1-22.)[3] On May 22, 2013, in a five page opinion, the trial court denied Petitioner's MAR. (Docket Entry 3, ¶ 11(a); Docket Entry 3-1 at 6-10.) On August 14, 2013, Petitioner filed a Motion for Reconsideration of the MAR (Docket Entry 3, ¶ 11(b); Docket Entry 3 at 27-31; Docket Entry 3-1 at 1-5),[4] which the trial court denied on August 23, 2013 (Docket Entry 3, ¶ 11(b); Docket Entry 3 at 26). Petitioner sought certiorari review with the North Carolina Court of Appeals. (Docket Entry 3, ¶ 11(c); Docket Entry 3 at 21-25.) On October 24, 2013, the North Carolina Court of Appeals denied that petition. (Docket Entry 3, ¶ 11(c); Docket Entry 3 at 20.)

---

[2] The trial court appears to have filed a corrected copy of the judgment and commitment forms on February 21, 2011; however, the presiding judge dated and signed the judgment and commitment forms on January 10, 2011. (See Docket Entry 3-2 at 41-43).

[3] It appears that Plaintiff included with the instant Petition a copy of his MAR that spans two docket entries. (See Docket Entry 3-1 at 11-15; Docket Entry 3-2 at 1-22.)

[4] It appears that Plaintiff included with the instant Petition a copy of that reconsideration motion that spans two docket entries. (See Docket Entry 3 at 27-31; Docket Entry 3-1 at 1-5.)

Finally, Petitioner signed his Petition, under penalty of perjury, and dated it for mailing on December 4, 2013 (Docket Entry 3 at 11), and the Court stamped and filed the Petition on December 9, 2013 (id. at 1).[5] Respondent has moved to dismiss the Petition on statute of limitation grounds (Docket Entry 6), Petitioner filed a response to Respondent's instant Motion (Docket Entry 9), Respondent filed a reply (Docket Entry 10), and Petitioner filed a surreply (Docket Entry 11).[6] For the reasons that follow, the Court should grant Respondent's instant Motion.

## **Petitioner's Claims**

Petitioner raises five claims for relief in his Petition: (1) "Violation of due process by denying the Petitioner's right of consular visit. Vienna Convention Article 36" (Docket Entry 3 at 13); (2) "Violation of [d]ue [p]rocess when plea of guilty was unknowing, unintelligent, and unknowing [sic]," because the plea agreement he signed provided for a sentence "not to exceed 35-42 months" (id. at 14); (3) "Ineffective [a]ssistance of counsel violating Sixth Amendment[] of the US Constitution," due to his

---

[5] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on December 4, 2013, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 3 at 11.)

[6] This Court's Local Rules do not allow surreplies. See M.D.N.C. LR 7.3. However, Respondent did not move to strike the surreply and it does not change the basis of the undersigned's recommendation.

3

counsel's failure to use "his investigative powers to look more into the details of [] [P]etitioner's charges, prior record level and [to] give a proper notice of appeal" (id. at 15 (emphasis removed)); (4) "Violation of due process by sentencing the defendant out of the mitigated range - Level I" (id. at 16); and (5) "Violation of [d]ue [p]rocess when factual material [w]as not presented to the defese [sic] violating Brady[v. Maryland, 373 U.S. 83 (1963)] law" (id. at 17).

## **Discussion**

Respondent moves for dismissal of the Petition on the grounds that Petitioner filed his Petition outside of the one-year limitation period, see 28 U.S.C. § 2244(d)(1). (Docket Entry 6 at 1.) In order to assess Respondent's statute of limitations argument, the undersigned must first determine when Petitioner's one-year period to file his Section 2254 Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

4

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005). Neither Petitioner nor Respondent claim that subparagraphs (B) or (C) apply in this situation. (See Docket Entries 3, 6, 7, 9, 10, 11.) However, Petitioner does assert that subparagraph (D) applies. (Docket Entry 3 at 18.) Alternatively, Petitioner claims, for reasons detailed below, that the statute of limitations should not prohibit the Court from addressing the merits of his case. (Id.) Thus, the undersigned must first determine which subparagraph applies to calculate when the statute of limitations commenced.

Under subparagraph (D), the one-year limitation begins when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28 U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); see also Johnson v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.)

5

("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance.").

In the instant Petition, Petitioner contends that subparagraph (D) applies because "he received a partial part of the discovery and clearly indicated [sic] that the prosecutor failed to turn into the defense the evidence to prove that there was any fingerprints/DNA on the drugs . . . ." (Docket Entry 3 at 18; see also id. at 17 ("[T]he prosecutors in the case at bar hid material information which proves that there were not a single fingerprint on the aforesaid drugs . . . .").) Petitioner's argument in this regard lacks merit.

At the time he pled guilty, Petitioner knew, or through the exercise of due diligence could have learned, whether he had received a consular visit, whether he had received a sentence of only 35-42 months in prison, and whether he received a sentence in the mitigated range for prior record level I. Thus, Petitioner knew the factual predicate of Grounds One, Two, and Four when he pled guilty and received his sentence, regardless of what the state had disclosed (or failed to disclose) about DNA or fingerprint analysis. Therefore, subparagraph (D) does not apply to those Grounds.

Nor has Petitioner shown how knowledge about the State's disclosure of (or failure to disclose) DNA or fingerprint evidence affected Petitioner's ability to assert a claim based on his counsel's alleged failure to properly investigate Petitioner's prior record level or to file a timely notice of appeal. (See Docket Entry 3 at 18; Docket Entries 9, 11.) As a result, subparagraph (D) does not apply to those aspects of Ground Three.[7]

What remains concerns the portion of Ground Three alleging ineffective assistance due to the failure of trial counsel to adequately investigate the charges against Petitioner and Ground Five, which asserts that the State violated Brady by failing to disclose exculpatory fingerprint evidence. In order to determine when the statute of limitations commenced for these claims under subparagraph (D), Petitioner should have included in his instant Petition when he obtained the report containing his fingerprint and/or DNA analysis from the drugs. Petitioner's failure to do so proves fatal.

---

[7] Furthermore, in regards to Petitioner's notice of appeal claim, "[i]n North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute." State v. Pimental, 153 N.C. App. 69, 72, 568 S.E.2d 867, 869 (2002). North Carolina statutorily limits the appeal rights of individuals who pled guilty. See N.C. Gen. Stat. § 15A-1444 (2009). Because Petitioner received the statutorily required sentence and pled guilty, Petitioner could not appeal his conviction as a matter of right. Id. Even if Petitioner had a right to appeal, Petitioner provides no explanation for his failure to raise that claim, in any form, for over two years. Thus, Plaintiff has failed to demonstrate the necessary due diligence for application of subparagraph (D) to this claim.

7

"[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006). In his filings, Petitioner does not state when he supposedly received the report containing exculpatory fingerprint and/or DNA evidence.[8] Clearly, Petitioner obtained the report at least by March 14, 2013, when he filed his MAR and mentioned the alleged report. (See Docket Entry 3-2 at 17.) However, no other information appears to explain how or when Petitioner obtained the report. Absent such allegations, Petitioner's conclusory and unsupported statement that subparagraph (D) applies (see Docket Entry 3 at 18) cannot and does not demonstrate the necessary "due diligence" for application of subparagraph (D). See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the alleged Brady materials earlier); Farabee v. Clarke, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain inability to discover predicate earlier), recommendation adopted, 2013 WL 1098093 (E.D. Va. March 13, 2013) (unpublished); Norrid v.

---

[8] Additionally, Petitioner did not include a copy of the report in his filings with the Court.

8

Quarterman, No. 4:06-cv-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that the petitioner had the burden of demonstrating the applicability of subparagraph (D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'"). Accordingly, subparagraph (D) does not apply.

Under subparagraph (A), Petitioner's case became final on January 10, 2011 - the date of his judgment and conviction.[9] North Carolina limits the rights of individuals who pled guilty to appeal their convictions. See N.C. Gen. Stat. § 15A-1444 (2009). Here, the trial court sentenced Petitioner to a consolidated sentence of 175 to 219 months (Docket Entry 3-2 at 41-43) - the statutorily required sentence for the charge of trafficking by possessing, transporting, or delivering 400 grams or more of cocaine, see N.C. Gen. Stat. § 90-95(h)(3)(c) (2009). Therefore, Petitioner could not appeal his conviction as a matter of right. See § 15A-1444 (2009). Petitioner's case thus became final, for purposes of calculating the limitation period, on January 10, 2011. See Gonzalez v. Thaler, __ U.S. __, __, 132 S. Ct. 641, 653-54 (2012)

---

[9] As previously mentioned, see footnote 2, the trial court filed a corrected version of the judgment and commitment forms on February 21, 2011. The difference between the two dates does not affect the undersigned's analysis. Even if the entry of the corrected judgment form controlled, Petitioner would still have filed his Petition untimely.

9

(holding that a petitioner's case becomes final when the time for pursuing direct review expires); see also Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) (finding that, because the petitioner did not have a right to appeal, the limitation period ran from the day of judgment) (Osteen, Sr., J., adopting the recommendation of Dixon, M.J.).[10] The one-year limitation period ran from January 10, 2011, to its expiration on January 10, 2012.

Although Petitioner filed a MAR in state court, the limitation period had already run, and the belated filing could not revive the already expired one-year limitation period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after the federal limitations period do not restart or revive the federal limitations period). Here, Petitioner did not file his Petition until almost two years after the limitations period had run. Therefore, Petitioner filed his Petition untimely.

Despite the Petition's untimeliness, Petitioner requests the Court to waive or toll the statute of limitations and address the merits of his Petition. (Docket Entry 3 at 18.) Petitioner believes his appointed trial counsel provided ineffective assistance, so the Court should not dismiss his petition for

---

[10] Even if Petitioner had the opportunity to appeal, the North Carolina Rules of Appellate Procedure require a notice of appeal within fourteen days of judgment. N.C.R. App. P. 4(a)(2). Thus, Petitioner's ability to appeal would have expired January 24, 2011, and the limitations period would have expired January 24, 2012 - well before Petitioner filed his first MAR or this Petition.

untimeliness. (Id.) Petitioner relies on Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911 (2013), and Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), to support this request. (Docket Entry 3 at 18.)

Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one-year statute of limitations for habeas claims, see 28 U.S.C. § 2244(d)(1), a court can equitably toll the one-year limitations period, see Holland v. Florida, 560 U.S. 631, 634 (2010). Equitable tolling requires that Petitioner demonstrate that (1) he has diligently pursued his rights, and (2) extraordinary circumstances prevented a timely filing. Id. at 649. Equitable tolling requires a case by case analysis. Id. at 649-50.

In this case, Petitioner presents a baseless claim for equitable tolling. Even assuming Petitioner received ineffective assistance in deciding to plead guilty and in his subsequent sentencing, Petitioner fails to demonstrate how that prevented him from filing his habeas petition in a timely manner. Thus, counsel's alleged ineffectiveness does not affect the timeliness of his Petition. Furthermore, Petitioner's cited cases do not change this analysis.

Both Trevino and Martinez addressed whether a court could bypass the procedural default rule to address claims of ineffective assistance of counsel in certain situations. See Trevino, 133 S. Ct. at 1915; Martinez, 132 S. Ct. at 1313. In both cases, the

Supreme Court held that where petitioners, under state law or as a matter of practice, cannot claim ineffective assistance of counsel on direct review, the procedural default rule will not prevent a federal court from addressing the issue if petitioners had either no counsel or ineffective counsel in the initial-review collateral proceeding. Trevino, 133 S. Ct. at 1921; Martinez, 132 S. Ct. at 1320. Neither case overruled or even addressed the statute of limitations as Petitioner claims (see Docket Entry 9 at 4). See Trevino, 133 S. Ct. at 1911; Martinez, 132 S. Ct. at 1309. Thus, despite Petitioner's invocation of Trevino and Martinez, the Petition remains untimely.

As a last resort, Petitioner argues that his actual innocence ought to prevent application of the statute of limitations. (Docket Entry 3 at 18.) The United States Supreme Court has recognized that a showing of actual innocence may overcome the one-year statute of limitations. McQuiggin v. Perkins, ___ U.S. ___, ___, 133 S. Ct. 1924, 1928 (2013). However, the Court also recognized that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id. In this case, Petitioner provides nothing beyond his conclusory allegations of innocence. Furthermore, Petitioner's guilty plea undercuts his argument that he "claimed his innocence from day

one." (Docket Entry 3 at 18.) Simply, Petitioner does not present the "rare" case required by McQuiggin.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 6) be granted, the Petition (Docket Entry 3) be denied, and that Judgment be entered dismissing this action.

                                                    /s/ L. Patrick Auld
                                                      **L. Patrick Auld**
                                    **United States Magistrate Judge**

January 9, 2015