IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALBERTO MARQUEZ CRUZ,      )
                           )
        Petitioner,        )
                           )
   v.                      )     1:13CV1097
                           )
BOB W. MARSHALL and        )
FRANK L. PERRY,            )
                           )
        Respondents.       )

## **MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 3.) This matter now comes before the court upon remand from the United States Court of Appeals for the Fourth Circuit. Cruz v. Marshall, 673 F. App'x 296 (4th Cir. 2016) (unpublished). Pursuant to that remand, the circuit court directed this court to review de novo the Memorandum Opinion and Recommendation ("Recommendation") of United States Magistrate Judge L. Patrick Auld and Petitioner's objections to that Recommendation, see Cruz, 673 F. App'x at 299. This court will set out its de novo analysis herein below. Nevertheless, before this court completed its de novo review as directed, the State filed a motion for summary judgment (Doc. 28), and Petitioner has responded (Doc. 35). That motion is ripe for ruling. Rather

than refer the motion for summary judgment to the Magistrate Judge in accordance with this court's case assignment order, this court will also address the State's motion for summary judgment.

I.   **PROCEDURAL HISTORY**

On January 10, 2011, in the Superior Court of Guilford County, Petitioner pled guilty to conspiracy to traffic in more than 400 grams of cocaine, trafficking by possessing more than 400 grams of cocaine, trafficking by transporting more than 400 grams of cocaine, trafficking by delivering more than 400 grams of cocaine, trafficking by transporting 28-200 grams of cocaine, trafficking by sale and delivery of 28-200 grams of cocaine, and trafficking by possessing 28-200 grams of cocaine, in cases 10CRS084147-150 and 10CRS084152-153, and received a consolidated judgment with a mandatory term of 175 to 219 months in prison. (See Petition for Writ of Habeas Corpus ("Petition") (Doc. 3) ¶¶ 1-6; Doc. 3-2 at 41-43.)[1] He did not appeal. (See Petition (Doc. 3) ¶ 8.)

---

[1] Throughout this document, pin citations refer to the number appended to the footer of the document upon its filing in the CM/ECF system. The trial court appears to have filed a corrected copy of the judgment and commitment form on February 21, 2011; however, the presiding judge dated and signed the form on January 10, 2011. (See Doc. 3-2 at 41-43).

On March 8, 2013, Petitioner mailed a Motion for Appropriate Relief ("MAR") to the trial court (see Petition (Doc. 3) at 23; Doc. 3-1 at 11-15; Doc. 3-2 at 1-22), which that court denied on May 21, 2013 (see Petition (Doc. 3) ¶ 11(a); Doc. 3-1 at 6-10). On August 14, 2013, Petitioner filed a Motion for Reconsideration of the MAR (see Petition (Doc. 3) ¶ 11(b); id. at 27-31; Doc. 3-1 at 1-5), which the trial court denied on August 23, 2013 (see Petition (Doc. 3) ¶ 11(b); id. at 26). Petitioner sought certiorari review with the North Carolina Court of Appeals. (See id. ¶ 11(c); id. at 21-25.) On October 24, 2013, the North Carolina Court of Appeals denied that petition. (See id. ¶ 11(c); id. at 20.)

Petitioner then signed the instant Petition, under penalty of perjury, and dated it for mailing on December 4, 2013 (see Petition (Doc. 3) at 11), and the court stamped and filed the Petition on December 9, 2013 (id. at 1).[2] Respondents moved to dismiss the Petition on statute of limitation grounds, (Docs. 6, 7), and the Magistrate Judge issued a Memorandum Opinion and Recommendation that the court grant Respondents' motion and dismiss the Petition as untimely. (Recommendation (Doc. 12).)

---

[2] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the court deems the instant Petition filed on December 4, 2013, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Petition (Doc. 3) at 11.)

Petitioner filed objections to the Recommendation (Pet'r's Objs. (Doc. 14)), in which he supplemented his argument with additional factual allegations regarding the timeliness of his Petition (see id. at 3-5). The court (per the Honorable James A. Beaty, Jr.) entered an Order and Judgment adopting the Recommendation and dismissing the Petition as untimely. (Docs. 15, 16.)

Petitioner appealed (Doc. 17), and the United States Court of Appeals for the Fourth Circuit appointed Petitioner counsel (Doc. 21) and granted him a certificate of appealability on the issue of the timeliness of his Brady claim (Doc. 22).[3] The Fourth Circuit vacated the court's Judgment based on the following reasoning:

> The magistrate judge dismissed as untimely the ineffective assistance of counsel and Brady claims because Petitioner failed to include specific dates when he learned facts critical to these claims. Petitioner responded by providing those dates [in his objections]. With the new information, the [Report & Recommendation] no longer included the basis to dismiss Petitioner's Brady or ineffective assistance of counsel claims. Therefore, the district court should have explained its decision that the petition was untimely so as to permit meaningful appellate review.
>
> For the foregoing reasons, we vacate and remand for further proceedings. Specifically, we direct the

---

[3] On appeal, Petitioner subsequently filed a motion to expand the certificate of appealability to include the timeliness of his ineffective assistance of counsel claim, which the Fourth Circuit granted.

> district court to review de novo the [Report & Recommendation], including Petitioner's objections, and provide sufficient explanation for its ruling, whatever that may be.

Cruz, 673 F. App'x at 299.

The Magistrate Judge granted Respondents' motion to expand the record to include the stenographic transcript of Petitioner's plea proceedings (Docs. 25, 26), motion for leave to exceed the page limit in Respondents' summary judgment brief (Doc. 31), and motion to amend/correct Respondents' brief in support of the summary judgment motion (Docs. 32, 33). (Text Order dated June 30, 2017.) Remaining for adjudication is Respondents' for summary judgment (Doc. 28), to which Petitioner has responded in opposition. (Doc. 35.)

## II. **DISCUSSION**

### A. **Objections**

In the Recommendation, the Magistrate Judge analyzed the timeliness of Petitioner's ineffective assistance of counsel and Brady claims under 28 U.S.C. § 2244(d)(1)(D), and recommended dismissal of those claims as untimely based on the following reasoning:

> The United States Court of Appeals for the Fourth Circuit has explained:
>
>> Under § 2244(d)(1). . . (D), the one-year limitation period begins to run from . . . :
>>
>> . . . .

> (D) the date on which the factual
> predicate of the claim or claims
> presented could have been
> discovered through the exercise of
> due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008).

. . . .

Under subparagraph (D), the one-year limitation begins when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28 U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); see also Johnson v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance.").

. . . .

. . . In order to determine when the statute of limitations commenced for these claims under subparagraph (D), Petitioner should have included in his instant Petition when he obtained the report containing his fingerprint and/or DNA analysis from the drugs. Petitioner's failure to do so proves fatal.

. . . In his filings, Petitioner does not state when he supposedly received the report containing exculpatory fingerprint and/or DNA evidence. Clearly, Petitioner obtained the report at least by March 14, 2013, when he filed his MAR and mentioned the alleged report. However, no other information appears to explain how or when Petitioner obtained the report. Absent such allegations, Petitioner's conclusory and unsupported statement that subparagraph (D) applies cannot and does not demonstrate the necessary "due diligence" for application of subparagraph (D).

(Recommendation (Doc. 12) at 4-8 (footnote and internal citations omitted).)

In Petitioner's objections to the Recommendation, he reasserts that subparagraph (D) applies, and adds the following new facts and argument, emphasized below:

> Petitioner contends that subparagraph (D) of 28 USC § 2244(d)(1) applies because <u>Petitioner received on or about January 15, 2013 the [d]iscovery documents presented by the State</u>, and within the aforesaid [d]iscovery, Petitioner found out, for the first time, the FACT that the aforesaid and alleged drugs were NEVER tested for DNA, and the report indicated that NO fingerprints were found on it [sic].
>
> <u>Petitioner found the said lack of evidences [sic] on January 15, 2013</u>, and the said information was [m]aterial for the Petitioner's case and remained obstructed and hidden by the [district attorney] from the Petitioner causing GREAT PREJUDICE to the [d]efense.
>
> Had Petitioner's [c]ounsel requested the results of the fingerprints and the DNA testing, [Petitioner] would have opted to go to trial. . . .
>
> <u>Petitioner contends that he requested a copy of the "entire file" to his [c]ounsel since the day of his arrest, and after due dilligence [sic], [Petitioner] received his file from [c]ounsel on or about March 1st, 2013.</u>
>
> <u>Counsel refused to turn in, the complete file until the Indigent Defense Service and the [North Carolina] State Bar intervene[d] and order[ed] [c]ounsel to forward the entire file to the Petitioner</u>.

(Pet'r's Objs. (Doc. 14) at 3-4 (emphasis added).)[4] For the reasons that follow, the court will overrule Petitioner's objections.[5]

Petitioner's allegations, emphasized above, fall far short of establishing that Petitioner could not, with due diligence, have discovered the factual predicates of his ineffective assistance and Brady claims earlier than January 15, 2013. As an initial matter, Petitioner has provided nothing, beyond his unsworn statements, to substantiate these new factual allegations. Petitioner has not provided the court with copies

---

[4] Although Petitioner purports to verify his objections, the "Verification" lacks notarization or any indication that he made his statements under oath, affirmation, or penalty of perjury. (See Pet'r's Objs. (Doc. 14) at 7.)

[5] The Fourth Circuit very recently clarified that, although district courts need not consider new claims or grounds for relief raised for the first time in objections, those courts must, on de novo review, consider all new factual allegations and arguments in the objections directed at existing claims. See Samples v. Ballard, No. 16-6740, 2017 WL 2695194, at *4-5 & n.7 (4th Cir. June 23, 2017) (providing that its prior decision in United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992), which held that, "as part of its obligation to determine de novo any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate," applies in the habeas context and acknowledging that its "approach in George is a minority position, and one that has been criticized and rejected by our sister circuits"). Accordingly, the court will consider Petitioner's new factual allegations as part of its de novo review.

of (1) the report reflecting the fingerprint analysis of the drugs or any of the other "discovery documents"; (2) correspondence (if any) between Petitioner and his counsel, the "Indigent Defense Service," and/or the North Carolina State Bar regarding his requests for the case file; (3) the "Order" from the State Bar to Petitioner's counsel to forward the case file to Petitioner; and (4) correspondence (if any) with the State regarding "discovery documents." (See Docs. 3, 14, 35.) Moreover, Petitioner has not provided any details regarding the timing or number of his requests for his case file. (See id.) Petitioner also does not explain why, given the State's apparent willingness to produce the fingerprint report, he was not able to procure the report earlier than January 15, 2013. (See id.)

Petitioner's failure to provide the above-described details falls far short of establishing that Petitioner could not have become aware of any relevant discovery information prior to January 15, 2013. Petitioner does not have a right to wait until he receives hard copies of information to file a claim. As a result, evidence of due diligence requires an explanation of when the information could have been or was discovered in the exercise of due diligence, not simply when the hard copy of the report was provided to Defendant.

First, "Petitioner contends that he requested a copy of the 'entire file' to his [c]ounsel since the day of his arrest, and

after due dilligence [sic], [Petitioner] received his file from [c]ounsel on or about March 1st, 2013." (Pet'r's Objs. (Doc. 14) at 3-4.) This allegation suggests Petitioner was aware of a discovery file at some point during his representation. His complaint is in the failure of counsel to provide a physical copy of the file; Petitioner nowhere alleges that counsel did not review the file with Petitioner nor does he allege that he was not aware of the file information. Petitioner's awareness of the file information, regardless of whether he received a physical copy of the documents, can be sufficient to provide notice of the claim. See, e.g., McCleskey v. Zant, 499 U.S. 467, 499 (1991) ("[E]ven if the State intentionally concealed the 21-page document, the concealment would not establish cause here because, in light of McCleskey's knowledge of the information in the document, any initial concealment would not have prevented him from raising the claim in the first federal petition."). Petitioner carefully avoids describing the discovery information he was provided during the original case. While this lack of information may not establish Petitioner did in fact receive any information on either fingerprint or DNA testing during the original case, it explains why Petitioner's conclusory allegations are insufficient to establish that he could not or did not discover the fingerprint/DNA testing prior to January 15, 2013, in the exercise of due diligence. Petitioner's

allegations only address when he contends he received hard copies of the file, not when he received the information in the file or may have been on notice of the information in the file.

Second, Petitioner's silence on the issue of what he did or did not receive during the original case is all the more significant as Petitioner sought a substantial assistance departure at sentencing. The State, as part of the summary judgment motion, attached a copy of the transcript of plea hearing. (See Ex. 1 (Doc. 26-1).) As part of the proffer of facts tendered by the State and not objected to by Petitioner, the prosecutor gave the following statement:

> Mr. Cruz almost immediately indicated to law enforcement officers – they explained to him that he was being charged with these offenses – that he could attempt to contact the source for the cocaine and make arrangements for that individual to meet with the law enforcement officers. . . .
>
> Mr. Cruz went on to explain to the law enforcement officers that the individual that had driven him there, Mr. Herrera, was aware that he had the drugs, and that while another individual was responsible for the drugs, Mr. Herrera was aware that he was bringing drugs to this location, and he had offered to pay him $200 to drive.

(Id. at 17.) Petitioner's counsel argued at sentencing that Petitioner:

> told me, during my first conversation with him, that he wished to attempt to provide whatever information he could. It appears all of the information he provided was truthful, although, unfortunately, it was all not actionable. . . .

> All of this is a long way of my asking the Court to consider the substantial assistance statute 90-95(h) subparagraph 5 . . . ."

(Id. at 22.) These facts make it clear that Petitioner initially made his own independent decision to cooperate with law enforcement and to some degree identified his supplier, regardless of the presence of fingerprint or DNA evidence. Petitioner persisted in his efforts to cooperate through sentencing on January 10, 2011 (see Ex. 1 (Doc. 26-1) at 1).

Under such circumstances, Petitioner has not demonstrated the necessary "due diligence" for application of subparagraph (D). See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the alleged Brady materials earlier); Farabee v. Clarke, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain inability to discover predicate earlier), recommendation adopted, 2013 WL 1098093 (E.D. Va. Mar. 13, 2013) (unpublished); Norrid v. Quarterman, No. 4:06-CV-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that petitioner bears burden of establishing applicability of section 2244(d)(1)(D), including his due diligence, and that conclusory statements do not satisfy burden); Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D.

Mich. 2003) (holding that unsupported and conclusory arguments do not warrant application of § 2244(d)(1)(D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (finding subparagraph (D) inapplicable where petitioner "never identifie[d] when or how he discovered his 'new evidence,'" and noting that petitioner's "contention that he could not have discovered it sooner with due diligence is unsupported and conclusory").

As a final matter, although Petitioner does not specifically object to the Magistrate Judge's recommendation to reject Petitioner's actual innocence gateway claim (see Doc. 12 at 12-13), he reasserts in the objections the argument that his actual innocence ought to prevent application of the statute of limitations (see Pet'r's Objs. (Doc. 14) at 5). The United States Supreme Court has recognized that a showing of actual innocence may overcome the one-year statute of limitations. McQuiggin v. Perkins, 569 U.S. ___, ___, 133 S. Ct. 1924, 1928 (2013). However, the Court also recognized that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id. In his objections, Petitioner merely reiterates his conclusory allegations of innocence. (See Pet'r's Objs. (Doc. 14) at 5; see also Petition (Doc. 3) at 18.) Furthermore, Petitioner's guilty

plea undercuts his argument that he "claimed his innocence from day one." (Petition (Doc. 3) at 18.) Accordingly, the Magistrate Judge correctly rejected Petitioner's claim of actual innocence.

### B. Motion for Summary Judgment

Respondents move for summary judgment on the grounds, inter alia, that subparagraph (D) of the one-year statute of limitations bars Petitioner's ineffective assistance and Brady claims. (See Doc. 29 at 9-17.) Petitioner responded in opposition, but did not provide any facts or argument in support of his opposition. (Doc. 35.) For the reasons described above, the court adopts the Magistrate Judge's recommendation that subparagraph (D) bars the Petition. Accordingly, the court will grant Respondents' Motion for Summary Judgment.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner's objections (Doc. 14) are **OVERRULED,** that Respondent's Motion for Summary Judgment (Doc. 28) is **GRANTED,** and that the Petition (Doc. 3) is **DENIED.** A Judgment dismissing this action will be entered contemporaneously with this Order. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

This the 20th day of September, 2017.

                                /s/ William L. Osteen, Jr.
                                   United States District Judge